UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TONYA ADAMS, ALMA ANTUNEZ, AND HAMERLING BLANDON**<br><br>    Plaintiff,<br><br>v.<br><br>**AMEC FOSTER WHEELER USA CORPORATION, AND JOHN WOOD GROUP, PLC**<br><br>    Defendants. | CIVIL ACTION NO. 2:21-cv-01338<br><br>JUDGE MARTIN L.C. FELDMAN, SECTION F<br><br>MAGISTRATE JUDGE KAREN WELLS ROBY, DIVISION 4 |

## FIRST AMENDED COMPLAINT FOR EMPLOYMENT DISCRIMINATION

This First Amended Complaint of Tonya Adams, Alma Antunez, and Hamerling Blandon, is filed within 21 days of service of Defendants' Answer (R. Doc. 6) as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1)(B), and respectfully represents as follows:

### PARTIES

1.  The plaintiffs are Tonya Adams ("Ms. Adams"), a person of full age of majority and resident of Little River County, Arkansas; Alma Antunez ("Ms. Antunez"), a person of full age of majority and resident of Jefferson Parish, Louisiana; and Hamerling Blandon ("Ms. Blandon"), a person of full age of majority and residents of Jefferson Parish, Louisiana. Plaintiffs, at all relevant times, were employees of the Defendants within the protection of the Civil Rights Act. At all relevant times, each plaintiff was employed by Wood in an industrial construction project building the YCI Methanol Plant in St. James Parish, Louisiana.

2.  Made defendants herein are:

    a.  Amec Foster Wheeler USA Corporation, a foreign corporation registered

1

to transact business in the state of Louisiana, engaged in the construction business within the State of Louisiana, and Eastern District Louisiana; and

    b. John Wood Group PLC, a foreign corporation registered to transact business in the state of Louisiana, engaged in the construction business within the State of Louisiana, and Eastern District Louisiana.

    c. Amec Foster Wheeler Kamtech, Inc., a foreign corporation registered to transact business in the state of Louisiana, engaged in the construction business within the State of Louisiana, and Eastern District Louisiana. Upon information and belief, John Wood Group PLC, Amec Foster Wheeler USA Corporation, and Amec Foster Wheeler Kamtech, Inc., are joint employers or co-employers, or otherwise corporate alter egos of each other, such that both defendants are collectively referred to herein as "Wood" or "Defendants".

## JURISDICTION

3. This action is brought pursuant to the Civil Rights Act of 1964 § 7, 42 U.S.C. § 2000e *et seq*. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

## VENUE

4. Venue is proper for this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of Louisiana, and the Defendants regularly transact business in this District.

## STATEMENT OF FACTS

5. Ms. Adams is craft worker with experience operating heavy equipment who was hired as a craft worker by Wood in September 2018. Ms. Antunez was hired as a carpenter's helper by Wood in February 2019. Ms. Blandon was hired as a carpenter's helper by Wood in

September 2018. All three plaintiffs served as model employees during their time employed by Wood.

6. Commencing shortly after their starting dates, each of the plaintiffs began experiencing harassment at the hands of their supervisors Alfred "Gypsy" Ramirez ("Ramirez") and Jaime Rodriguez ("Rodriguez"). The harassment consisted of verbal and physical incidents of explicit sexual comments, surreptitious photographing of the plaintiffs without their knowledge or consent, and unwanted sexual touching.

**SEXUAL HARASSMENT OF BLANDON**

7. Six months into her employment with Wood, Ms. Blandon began receiving unwanted remarks from Ramirez about her looks, explicit comments about her clothes and figure, and told her that she was going to "be his women."

8. During her employment, Ms. Blandon was assigned to clean Ramirez's office which is not in her job description or her duties. On January, 2019, the third time she was assigned to clean the office, Ramirez walked into the office and proceeded to grab her buttocks. Ms. Blandon ran out of the office and reported the harassment to her supervisor Rodriguez. Rodriguez proceeded to laugh at Ms. Blandon and did not address her harassment.

9. During her employment, Ramirez and Rodriguez would on several occasions attempt to be alone with Ms. Blandon in their offices. Fearing for her safety, Ms. Blandon constantly refused to appear alone with them and avoided their offices as a result.

10. Ramirez would take photos of Ms. Blandon during her employment without her consent or knowledge, while she was working on her assigned tasks. Ramirez would then send her the photos to her personal phone as well as messages that made sexual remarks about her appearance in said photos and propositioning her for sex.

11. During her employment, Ramirez would contact Ms. Blandon outside of work on Facebook messaging her, about whether she would be his woman. He would also demand that she come with him to his ranch in Texas.

12. Ms. Blandon reported Ramirez and Rodriguez's harassment a second time to her other foreman Jorge Mora, to which Mora advised he could not help her. Ms. Blandon knew that there are few women in the construction industry and that women are rarely if ever believed when reporting harassment. Ms. Blandon also feared if she continued to report her supervisor's abusive actions she would be discharged in retaliation, because that pattern of events had previously happened to her co-worker, Elena Bruno, who reported harassment by Rodriguez to her supervisors and was fired as a result.

## SEXUAL HARASSMENT OF ADAMS

13. During her time working for Wood, Ms. Adams was sexually harassed verbally and physically by Ramirez and Rodriguez, including verbal and physical incidents or explicit sexual comments and unwanted touching.

14. On June 1, 2020, Ms. Adams experienced physical sexual harassment by Ramirez. Ramirez touched Ms. Adams inappropriately on her lower stomach. Ramirez also made a sexual comment while continuing the inappropriate touching. Ms. Adams backed away in fear. Ramirez immediately threatened to fire Adams in retaliation for rejecting his advances.

15. Immediately after the incident with Ramirez on June 1, 2020, Ms. Adams reported Ramirez's sexual harassment to her supervisors Jeremy and Ronald Hardy. Both supervisors told her to ignore it, and suggested Ramirez was "letting off steam." At this time, Ramirez was superintendent of the YCI jobsite. Jeremy and Ronald Hardy told Adams other people were touched or harassed by Ramirez, but in their cases, the harassment went no further

than the initial harassing incident. Both supervisors failed to take steps to prevent the harassment or otherwise protect Ms. Adams.

16. Subsequent to rejecting his advances, Ramirez began refusing to give Adams assignments consistent with her ability and experience, and instead appointed her to less desirable work tasks. Further, after rejecting his advances, Ramirez hired and began training new employees to perform the exact job Adams was hired to perform. Ms. Adams also feared if she continued to report her supervisor's abusive actions she would be discharged in retaliation, because that pattern of events had previously happened to her co-worker, Elena Bruno, who reported harassment by Rodriguez to her supervisors and was fired as a result in October 2019. Ms. Bruno's termination in retaliation of her complaints of harassment to supervisors was well known to Wood employees at the time of their harassment, and caused Wood employees to distrust or fear Wood's policies for reporting harassment.

### SEXUAL HARASSMENT OF ANTUNEZ

17. During Ms. Antunez employment, Ramirez engaged in a regular pattern of commenting and discussing her appearance in a sexual manner, often asking whether she was single and propositioning her for sex.

18. Beginning in March 2019, Ramirez would approach Ms. Antunez daily to interrupt her work in order to make romantic advance saying that he had come to see her, and that he missed her, and propositioning her for sex. Ms. Antunez told Ramirez that she was married with two children and declined his sexual advances.

19. During her employment, Ms. Antunez needed two days off to take care of her son who was undergoing surgery. Ramirez told Ms. Antunez that she could not have her accrued days off because she had not "asked him correctly", and suggested that she needed to perform a

5

sexual act for him in order to receive her days off to take care of her son as a *quid pro quo*. Ms. Antunez became visibly uncomfortable and told Ramirez that she just needed him to sign her form. Ramirez in response laughed in front of Ms. Antunez and declined to sign the form.

20.  During her employment, Ms. Antunez experienced Ramirez frequently getting uncomfortably close and proceeding to inappropriately touch Ms. Antunez. Ramirez would introduce Antunez to their colleagues as his wife and tell his supervisors that one day he would marry her. When she asked him to stop and told him she was already married, he and others would proceed to laugh at her.

21.  Ms. Antunez's supervisors, including the specific people to whom she would have to report Ramirez's harassment, were firsthand witnesses of Ramirez's harassment. As a consequence, Ms. Antunez constantly feared that she would be terminated if she took any other actions to formally report Ramirez. It was common knowledge on the Wood jobsite that Ramirez harassed women who were employed underneath him. This information was known by Ramirez's supervisors, who would witness the harassment and not intervene.

22.  On August 21, 2020, Ms. Adams filed a formal written complaint about Ramirez.

23.  On August 21, 2020, Ms. Antunez and Ms. Blandon received complaints about their work, and met with their other supervisor, acting Superintendent Michael "Bright" Cowden, who informed them that the only complaints he heard were from Ramirez, and that in his opinion the two of them were doing a great job. Ramirez was asked to join the meeting and stated that he had no complaints with Antunez or Blandon's performance.

24.  Later that day, a layoff notice written on a small note with solely the names of Adams, Antunez, and Blandon was generated. This note was produced after Ms. Adams made the written complaint and after the meeting Ms. Antunez and Ms. Blandon with their supervisors

6

about their complaints. Cowden was not aware of the layoffs beforehand which is not the businesses typical practice.

25. After the complaint and firing the three women, Wood finally investigated their claims. As a result, Wood fired Mr. Ramirez.

26. Since their August 21, 2020 termination, Ms. Adams, Ms. Antunez, and Ms. Blandon have not obtained a new employment position though they have applied regularly. They have taken affirmative steps to mitigate their damages by seeking alternate employment.

27. Ms. Adams, Ms. Antunez, and Ms. Blandon filed charges of discrimination on the basis of sex, and retaliation with the Equal Employment Opportunity Commission on December 21, 2020.

28. Ms. Adams, Ms. Antunez, and Ms. Blandon received a right to sue notice dated June 14, 2021, authorizing them to bring private suit against the Defendants in this case. This complaint is timely filed within 90 days of plaintiff's receipt of the right-to-sue notice.

## COUNT I
Intentional Sex Discrimination in Employment Pursuant to
42 U.S.C. § 2000e *et seq*. ("Title VII")"

29. Paragraphs 1 – 28 are incorporated by reference.

30. Ms. Adams, Ms. Antunez, and Ms. Blandon are women and are members of a protected classes under Title VII.

31. Ms. Adams, Ms. Antunez, and Ms. Blandon were subjected to unwelcome harassment in the workplace, described in the paragraphs above. In doing so, the Defendants violated the fundamental rights of Ms. Adams, Ms. Antunez, and Ms. Blandon as provided Civil Rights Act of 1964 § 7, 42 U.S.C. § 2000e *et seq*. Specifically, Defendants have violated § 2000e-2(a), which provides that it shall be unlawful for an employer "to discriminate against any

individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race…[or] sex". 42 U.S.C. § 2000e-2(a).

32. The described harassment was made against Ms. Adams, Ms. Antunez, and Ms. Blandon because of their sex, and for their refusal to engage in quid pro quo sexual relations.

33. The described harassment affected a term, condition, or privilege of employment insofar as Ms. Adams, Ms. Antunez, and Ms. Blandon were forced to work in fear of harassment at the hands of their supervisor, and were ultimately terminated from employment.

34. Defendants are liable for the actions of its employees and supervisors Alfred Ramirez, and Jaime Rodriguez, while present and working on their worksite.

35. As a direct and proximate cause of the harassment and termination suffered, Ms. Adams, Ms. Antunez, and Ms. Blandon suffered damages, including, without limitation, past and future lost wages and benefits, including back pay and front pay, lost promotional opportunities, lost career advancement opportunities, emotional distress, mental anguish, humiliation, damage to reputation, expenses finding further employment, and all other damages as will be shown more fully at trial.

**COUNT II**
Intentional Sex Discrimination in Employment
Pursuant to and La. R.S. 23:332

36. Paragraphs 1 – 35 are incorporated by reference.

37. Defendants are liable to Ms. Adams, Ms. Antunez, and Ms. Blandon for violation of La. R.S. 23:332, for intentional discrimination in employment, for discharging them on the basis of their sex, and for their refusal to engage in quid pro quo sexual relations.

38.     Defendants are further liable to Ms. Adams, Ms. Antunez, and Ms. Blandon for discrimination against them on the basis of their sex with respect to their compensation, conditions, and privileges of employment described in the paragraphs above.

39.     As a result of Defendants' discrimination, Ms. Adams, Ms. Antunez, and Ms. Blandon are entitled to compensatory damages, back pay, benefits, reinstatement, front pay, reasonable attorney fees, and court costs.

## COUNT III
Retaliation in Violation of Title VII

40.     Paragraphs 1 – 39 are incorporated by reference.

41.     Ms. Adams, Ms. Antunez, and Ms. Blandon opposed sex-based harassment at Wood by lodging formal and informal Human Resources complaints and complaints with their supervisors in 2019 and 2020.

42.     As a result of Ms. Adams, Ms. Antunez, and Ms. Blandon statements, they were terminated on August 21, 2020, in violation of the anti-retaliation provision of Title VII which prohibits employers from retaliating against an employee for "oppos[ing] any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a).

43.     As a direct and proximate cause of their unlawful retaliatory termination, Ms. Adams, Ms. Antunez, and Ms. Blandon suffered damages, including, without limitation, past and future lost wages and benefits, including back pay and front pay, lost promotional opportunities, lost career advancement opportunities, emotional distress, mental anguish, humiliation, damage to reputation, expenses finding further employment, and all other damages as will be shown more fully at trial.

**COUNT IV**
Sexual Harassment / Hostile Work Environment

44. Paragraphs 1 – 43 are incorporated by reference.

45. Ms. Adams, Ms. Antunez, and Ms. Blandon are women and are members of a protected classes under Title VII. The harassment endured by the plaintiffs in this case was done on the basis of their sex and gender.

46. As established by the facts pled above, the work environment at Wood endured by plaintiffs in this case was both objectively and subjectively offensive.

47. The harassment by Wood supervisors Rodriguez and Ramirez was both severe and pervasive.

48. Prior the plaintiffs' termination, their co-worker Elena Bruno complained to her supervisors of sexual harassment by Rodriguez and Ramirez, but her complaints were ignored and she was fired in retaliation for lodging complaints.

49. Plaintiffs lodged several complaints with their supervisors regarding the harassment by Rodriguez and Ramirez, and those complaints were ignored and did not trigger any further investigation.

50. Additional co-workers and supervisors witnessed firsthand the sexual harassment by Rodriguez and Ramirez, but did nothing to prevent the sexual harassment by Wood supervisors against the plaintiffs.

51. As a direct and proximate cause of the sexual harassment and hostile work environment created by Defendants, Ms. Adams, Ms. Antunez, and Ms. Blandon suffered damages, including, without limitation, past and future lost wages and benefits, back pay and front pay, lost promotional opportunities, lost career advancement opportunities, emotional

distress, mental anguish, humiliation, damage to reputation, expenses finding further employment, and all other damages as will be shown more fully at trial.

## TRIAL BY JURY

52. Ms. Adams, Ms. Antunez, and Ms. Blandon are entitled to and requests a trial by jury on all issues so triable.

**WHEREFORE**, complainants, Tonya Adams, Alma Antunez, and Hamerling Blandon, pray for a trial by jury and after due proceedings are had, that there be judgment herein in his favor and against defendants, Amec Foster Wheeler USA Corporation, and John Wood Group, PLC, for all sums reasonable under the premises, compensatory damages, back pay and front pay, punitive damages, attorney's fees, costs of these proceedings, interest thereon from the date of judicial demand until paid, and all such other relief the plaintiff is entitled in equity or law.

**Respectfully submitted:**

**BRUNO & BRUNO, L.L.P.**

*/s/ Daniel A. Meyer*
Joseph M. Bruno (La. Bar # 3604)
Daniel A. Meyer (La. Bar # 33278)
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 562-6775
Email: dmeyer@brunobrunolaw.com
*Attorneys for Tonya Adams, Alma Antunez, and Hamerling Blandon*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this October 4, 2021, a copy of the above and foregoing motion and attachments has been served via United States Mail, properly addressed, postage prepaid, or via electronic transmission, to all counsel of record.

                                                           */s/ Daniel Meyer*
                                                           Daniel A. Meyer